ELMER E. JONES, Plaintiff in Error, *vs.* THE CHICAGO,
    ROCK ISLAND AND PACIFIC RAILWAY COMPANY, De-
    fendant in Error.

*Opinion filed December 17, 1907.*

1. CONSTITUTIONAL LAW—*effect of section 22 of article 4 of the
constitution.*   Section 22 of article 4 of the constitution, providing
that the legislature shall pass no special law granting any special
or exclusive privileges or immunities to any corporation, associa-
tion or individual, is a guaranty that the valid enactments of the
legislature shall be uniform in operation upon persons and prop-
erty and that all citizens shall have the equal protection of the
laws of the State.

2. SAME—*essential element of legislation applying to a certain
class.*   A law operating upon a certain class of persons is not spe-
cial legislation such as is prohibited by the constitution, provided
there is some substantial difference between the persons so classi-
fied and other persons not within the classification, when considered
with reference to the purpose of the law, which justifies the grant-
ing of the specific right conferred by such law.

3. SAME—*provision of Practice act relating to Supreme Court
reviewing facts is special legislation.*   As to cases at law in which

judgment was rendered prior to July 1, 1907, the proviso to section 120 of the Practice act of 1907, which attempts to empower the Supreme Court to review the facts where the Appellate Court finds the facts against the appellee and reverses the judgment without awarding a trial *de novo*, confers upon the appellee, in violation of the constitution, a special privilege not permitted to the appellant. (*Chicago and Alton Railroad Co.* v. *Fisher*, 141 Ill. 614, distinguished.

4. SAME—*fact that a statute, otherwise unconstitutional, relates to remedy does not save it.* If a statute is in violation of the constitution, the mere fact that it operates directly upon the remedy and not directly upon the right does not remove the objections to its validity. (*Kerfoot* v. *Cromwell Mound Co.* 115 Ill. 502, distinguished.)

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. CHARLES B. GARNSEY, Judge, presiding.

J. W. D'ARCY, for plaintiff in error.

SNAPP, HEISE & DIBELL, (R. A. JACKSON, and B. S. CABLE, of counsel,) for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The plaintiff in error brought a suit in the Will county circuit court against the defendant in error to recover damages for a personal injury, occasioned, according to the averments of the declaration, by negligence of the defendant in error. The general issue was interposed, trial was had and a verdict returned finding the defendant guilty and assessing the damages at $1600. A judgment was rendered upon the verdict on October 27, 1905. From that judgment the railway company prosecuted an appeal to the Appellate Court for the Second District. That court, upon consideration of the evidence, found, as a matter of fact, that the railway company was not guilty of the neglect charged against it, and on August 6, 1907, reversed the

judgment of the circuit court without remanding the cause. That finding of fact was incorporated in the judgment of the Appellate Court. Jones brings the case to this court by writ of error, and the principal assignment of error, and that upon which the case made in this court depends, is in the following words: "The Appellate Court erred in its finding of fact adversely to plaintiff in error."

In this class of cases, prior to July 1 of the present year, this court was without power to review the determination of the Appellate Court upon controverted questions of fact. (Hurd's Stat. 1905, chap. 110, sec. 90; *Lake Shore and Michigan Southern Railway Co.* v. *Richards,* 152 Ill. 59.) The present legislature, however, passed an act in relation to practice and procedure in courts of record which became effective on July 1 of this year, (Session Laws of 1907, p. 443,) by which an attempt was made to change the law in this respect in certain instances.

Section 122 of that act reads as follows: "The Supreme Court shall re-examine cases brought to it by appeal or writ of error from the Appellate Courts, as to questions of law only, except as otherwise provided in this act; and, in the cases aforesaid, no assignment of error shall be allowed calling in question the determination of the inferior or Appellate Courts upon controverted questions of fact therein."

Section 120 of that act is in these words: "If any final determination of any cause or proceeding whatever except in chancery shall be made by the Appellate Court, as the result wholly or in part of the finding of the facts, concerning the matter in controversy, different from the finding of the court from which such cause or proceeding was brought by appeal or writ of error, it shall be the duty of such Appellate Court to recite in its final order, judgment or decree, the facts as found; and the judgment of the Appellate Court shall be final and conclusive as to all matters of fact in controversy in such cause or proceeding: *Provided,* in actions at law where the Appellate Court reverses

the judgment of the trial court without awarding a trial *de novo,* as the result wholly or in part of finding the facts different from the finding of the trial court and in cases where the justices of the Appellate Court are divided in opinion on the law or facts, and the cause is taken by appeal or writ of error to the Supreme Court, then the provision that the judgment of the Appellate Court shall be final as to the facts, shall not apply, and both the facts and the law shall stand for review in the Supreme Court as in the Appellate Court."

It is under the provisions of the section last quoted that plaintiff in error seeks to have the Appellate Court's determination of facts reviewed in this court. The constitutionality of that statute is questioned in so far as it attempts to confer upon this court power to review the facts where the Appellate Court finds the facts against the appellee and reverses the judgment of the trial court without awarding a trial *de novo.* The provision of that section which applies where the judges of the Appellate Court are divided in opinion is not relevant to the present litigation, and will be disregarded in determining whether or not that section, in so far as it bears upon this case, is a valid enactment. The effect of the statute is to make the Appellate Court's determination of controverted facts non-reviewable if it determines the facts against the appellant in that court, and to make that determination reviewable if it determines the facts against appellee. In other words, if that court determines the facts one way the determination shall be reviewable; if it determines them the other way the determination shall not be reviewable.

Section 22 of article 4 of the constitution of 1870 provides, among other things, that "the General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: for * * * granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever."

231—20

Under the law as it stood when judgment was entered in the circuit court, if the case was taken to the Appellate Court any finding of fact made by that court would not be reviewable in this court. Prior to the time the cause was decided in the Appellate Court the present Practice act went into effect, and under its provisions if that court found the facts against the appellee the appellee had the right to have the determination reviewed by this court. The question arises, is that enactment a special law conferring a special privilege upon plaintiff in error?

The words "privileges and immunities" are made use of in the constitution of the United States and in various State constitutions. The meaning of those words where so used has been considered by the courts. In the *Slaughter House cases,* 16 Wall. 36, in construing the fourteenth amendment to the constitution of the United States, it was held that the "privileges and immunities" mentioned in that amendment were inclusive of all the rights which the State governments were created to establish and secure, and we have no doubt that it is in this broad sense that the words "privilege" and "immunity" are used in the clause of our constitution above quoted, and that they include every right which can be conferred or granted by any law of the State. By that provision of our constitution a guaranty is given that all valid enactments of the legislature shall be uniform in their operation upon persons and property, and by it all citizens are assured the equal protection of the laws of the State.

In Cooley on Constitutional Limitations (6th ed. pp. 481-483,) it is said: "A statute would not be constitutional * * * which should select particular individuals from a class or locality and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempt." That language has been quoted and approved by this court. *Gillespie* v. *People,* 188 Ill. 176; *Mathews* v. *People,* 202

id. 389; *Horwich* v. *Walker-Gordon Laboratory Co.* 205 id. 497.

In *Millett* v. *People,* 117 Ill. 294, this court referred with approval to the language originally used in *Wally's Heirs* v. *Kennedy,* 2 Yerg. 554, which reads as follows: "The rights of every individual must stand or fall by the same rule or law that governs every other member of the body politic or land under similar circumstances; and every partial or private law which directly proposes to destroy or affect individual rights, or does the same thing by affording remedies leading to similar consequences, is unconstitutional and void. Were it otherwise, odious individuals or corporate bodies would be governed by one law, the mass of the community and those who made the law by another, whereas a like general law, affecting the whole community equally, could not have been passed."

In *Sanitary District* v. *Bernstein,* 175 Ill. 215, we said: "Every citizen has an equal right with every other to resort to the courts of justice for the settlement and enforcement of his rights, and it is true that a discrimination between different classes of litigants which is merely arbitrary in its nature is a denial of that right and of the equal protection of the law."

When the judgment was entered in this cause in the circuit court the status of the parties in the Appellate Court in case an appeal was prosecuted or writ of error sued out was fixed,—that is to say, if the case went there by appeal, as it did go, the railway company would necessarily be appellant. There was no method after that time, or after July 1 of this year, by which it was possible for it to become an appellee in that court. When the statute became effective, if it was valid, a right was conferred upon the appellee in the suit in the Appellate Court which it was not possible for the appellant to enjoy and a burden was placed upon appellant to which it was not possible that the appellee could be subjected, viz., the right of the appellee in that

court to have the facts again reviewed in this court, in case the determination of that court, on the facts, was adverse to the appellee. According to the authorities above cited that was a manifest violation of the constitution, unless appellee was one of a class upon which the legislature might properly confer that right while denying it to appellant.

Legislation which applies only to a certain class in the community is not necessarily special legislation, within the meaning of the fundamental law of the State. Laws are general and uniform when alike in their operation upon all persons in like situation. When a law is made applicable only to one class of individuals, however, there must be some actual, substantial difference between the individuals so classified and other individuals in the State or community, when considered with reference to the purposes of the legislation. The class, if the law confers a benefit upon it, must be composed of individuals possessing in common some disability, attribute or qualification, or in some condition marking them as proper objects in whom to vest the specific right granted unto them. (*Harding* v. *People*, 160 Ill. 459; *Gillespie* v. *People, supra; Horwich* v. *Walker-Gordon Laboratory Co. supra.*) Members of the medical profession may properly be placed in one class, and constitutional laws applicable to that class alone, relating to the practice of medicine, may be enacted, but a statute regulating the descent of property could not be valid if it applied only to that class. Can it be said that parties who prior to the time this statute went into effect had been successful in obtaining a judgment in the *nisi prius* courts and whose cases had not been reviewed by the Appellate Court, as distinguished from the unsuccessful parties in the same litigation, possess any attribute, qualification or disability or are in any condition that marks them as the proper objects of legislative favors of the character conferred by this statute?

It is possible that the appellees or defendants in error whose cases had been determined in the court of original

jurisdiction and had not yet been reached in the Appellate Court might form a proper class to which, alone, certain new legislation should be applicable, as, for example, statutes in reference to the payment or advancement of costs in the Appellate Court, or in reference to the time within which such appellees or defendants in error could assign cross-errors, or in reference to the time within which they would be entitled to mandates from that court in case they were successful there. But this statute is one of different character and its constitutionality depends upon entirely different considerations. When the judgment of the circuit court was entered, either party in whose favor the Appellate Court might thereafter determine the facts had the right to have that finding stand without review by this court. Both parties to the litigation were in the same class so far as this question was concerned. They were classified by the fact that they were litigants in a case where the Appellate Court had the power to make a non-reviewable determination of the controverted facts, and there was nothing that marked the appellee in that court as a member of a particular class upon which the legislature might legitimately confer the additional right in reference to the final adjudication of the facts in the case which this statute seeks to give. The discrimination which this law attempts to make between the parties to this suit is purely arbitrary.

Counsel for plaintiff in error contends that this statute should be held constitutional upon the authority of *Chicago and Alton Railroad Co.* v. *Fisher,* 141 Ill. 614, for the reason that it was there decided that the legislature might properly determine in what class of cases the judgment of the Appellate Court should be final, excepting, of course, the four classes of cases in which an appeal from the Appellate Court to this court is guaranteed by the constitution. The answer to that argument is, that this statute is not one determining in what class of cases the judgment of the Appellate Court shall be final, but is a statute providing that

if the Appellate Court determines the facts in a case to be one way its judgment as to the facts is final, but that if it determines the facts in the same case to be the other way its determination is not conclusive of the facts. The case so relied upon by plaintiff in error is not in point.

Nor is the fact that the statute is one which applies to the remedy or regulates the practice significant. Where a statute is otherwise violative of the constitution, the mere fact that it operates directly upon the remedy and not directly upon the right does not remove the objection. "Remedies are the life of rights and are equally protected by the constitution." *Board of Education* v. *Blodgett,* 155 Ill. 441.

In *Kerfoot* v. *Cromwell Mound Co.* 115 Ill. 502, in discussing the question of the constitutionality of the statute which made the judgment of the Appellate Court upon the facts conclusive, this court considered the statute determining whether the facts should be reviewed in this tribunal as a law regulating the practice, merely, and it was there said that the court was aware of no case holding that parties have a "constitutional or vested right in the practice governing courts" except as to the right of trial by jury, and that "it has never been held that the legislature has no power to alter the practice of the courts of the State." That case does not control here, because the statute there under consideration operated equally upon the rights of both the parties to any particular cause.

This statute, as to the present litigation, in so far as it attempts to vest in this court the power to determine the facts, is a special law conferring a special right or privilege upon the plaintiff in error, and it cannot be here applied. The constitution forbids. Whether the statutory provision in question can be regarded as a valid enactment with reference to cases in which the final judgment in the *nisi prius* court is of a date later than the time when the act of which it is a part went into effect is now being considered by this court and will no doubt be determined at the present term.

There is no ground for the contention that the Appellate Court erred in applying the law to the facts of this case as it found the facts to be. Our determination of the constitutional question necessarily leads to an affirmance.

The judgment of the Appellate Court will be affirmed.

· *Judgment affirmed.*